UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                              )
JUAN CARLOS GINARTE,                          )
                                              )
          Plaintiff,                          )
                                              )
          v.                                  )          Civil Action No. 06-2216 (RJL)
                                              )
ROBERT S. MUELLER, III, et al.,               )
                                              )
          Defendants.                         )
_____ )


## DEFENDANTS' REPLY IN SUPPORT OF
## MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

Plaintiff's opposition to defendants' motion for summary judgment consists mainly of his vague speculation that records about him must exist within the FBI or another component of the Department of Justice. The basis for Plaintiff's certainty is not revealed, but nothing in his opposition demonstrates any issue of material fact with regard to the searches – which uncovered no responsive records – and defendants' motion should be granted. Each of Plaintiff's arguments is addressed below.

### Plaintiff Effectively Concedes That DOJ is the Only Proper Defendant

The government sought dismissal exclusively of claims purportedly asserted against individuals under the FOIA (as opposed to the entire case) because only the agency is a proper defendant. 5 U.S.C.§ 552(a)(4)(B); 5 U.S.C. § 552(f)(1). Although Plaintiff's opposition quibbles about the clarity of the FOIA on identifying the proper defendant, this is of no moment. Because Plaintiff named the Department of Justice as a defendant, there is a proper party already in the case, and Plaintiff's opposition fails to identify any basis for claims against individuals.

See Pl.'s Opp. at 5-6.  Accordingly, the Court should dismiss the individuals and proceed to resolving the Department of Justice's request for summary judgment.  See Fed. R. Civ. P. 12(b)(6).

**There Are No Responsive Records From FBI's Joint Terrorism Task Forces ("JTTF")**

Plaintiff challenges the adequacy of the FBI's search because the opening motion did does not address records from FBI's Joint Terrorism Task Forces ("JTTF").  See Pl.'s Opp. at 4. As the Second Declaration of David M. Hardy explains, JTTF consist of small groups of trained professionals located across the country.  See Second Declaration of David M. Hardy ("2d Hardy Dec."), ¶ 5 (attached as Exhibit 2).  The records for the JTTF are included in FBI's Central Record Systems, and the CRS was searched in response to Plaintiff's FOIA request through FBI's Central Records System.  See id. ¶ 6.

**Plaintiff's FOIA Request to OIPR**

Plaintiff's opposition accurately noted that defendants' motion for summary judgment did not address the FOIA request plaintiff submitted to the Office of Intelligence and Policy Review ("OIPR"), a distinct component of the Department of Justice and separate from the FBI.  See Pl.'s Opp. at 5.  The simple reason defendants did not address a request to OIPR in their opening motion is that the Complaint makes no allegation, reference, or claim regarding any FOIA request to OIPR.  As a result, nothing about a FOIA request to OIPR should forestall granting defendants' motion because the facts relating to the OIPR FOIA request are immaterial to any claim in the case.  See Fed. R. Civ. P. 8(a) (requiring a short, plain statement of claims); Bell Atlantic Corp. v. Twombly, --- U.S. --- , 127 S. Ct. 1955, 1964-65 (2007) (to avoid dismissal,

factual allegations "must be enough to raise a right to relief above the speculative level," and that a plaintiff must make "a 'showing,' rather than a blanket assertion, of entitlement to relief.'").

Nevertheless, in the interests of judicial economy, defendants obtained information from OIPR concerning plaintiff's FOIA request. As its name implies, the OIPR's mission is to advise U.S. law enforcement entities regarding intelligence matters and to prepare applications for electronic surveillance, physical search authorizing the installation and use of pen registers and trap and trace devices, and access to certain tangible things, to the United States Foreign Intelligence Surveillance Court ("FISC") whose proceedings are secret. See Declaration of Mark A. Bradley ("Bradley Dec.")  ¶¶ 3, 7 (attached as Exhibit 3); 50 U.S.C. § 1803(c). The OIPR maintains two general categories of records: operations records relating to proceedings before the FISC under the Foreign Intelligence Surveillance Act ("FISA"), including applications for authority to conduct electronic surveillance, physical searches, other authorities under FISA as referenced above, and other operational matters; and policy and correspondence records, including congressional inquiries and reports.

As the Bradley declaration demonstrates, the OIPR received an October 9, 2006 FOIA request for all information about plaintiff and notified plaintiff, by letter to his counsel dated November 7, 2006 that "a search of its policy and correspondence records did not reveal any information responsive to [his] request." Bradley Dec. ¶ 6.[1]  With regard to its operational files, the OIPR is unable either to confirm or to deny the existence of any responsive records because such information and its absence are both classified. See Bradley Dec. ¶¶ 7-12.

---

[1]  Plaintiff subsequently appealed OIPR's determination to the DOJ's Office of Information and Privacy ("OIP"), and OIP affirmed OIPR's response on April 13, 2007. See Bradley Dec. ¶¶ 13-14 & Exhibits C and D.

Accordingly, the existence or nonexistence of specific FISA records maintained by OIPR is classified, and exempt from the access provisions of the Privacy Act of 1974 pursuant to 5 U.S.C. § 552a(k)(1) and Exemption 1 of the FOIA.  5 U.S.C. § 552 (b)(1). FOIA Exemption 1 provides that the FOIA does not apply to matters that are:

> (a) specifically authorized under certain criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (b) are in fact properly classified pursuant to such Executive order.

5 U.S.C. § 552(b)(1); see Salisbury v. United States, 690 F.2d 966, 970 (D.C. Cir. 1982); Halperin v. Central Intelligence Agency, 629 F.2d 144, 147-48 (D.C. Cir. 1980).  In other words, under Exemption 1, Plaintiff is not entitled to records that have been properly classified.  Blazy v. Tenet, 979 F. Supp. 10, 23 (D.D.C. 1997).  Moreover, in determining whether records are properly classified a court must give "substantial weight" to agency declarations and affidavits, so long as they "contain reasonable specificity detail," even while it conducts a de novo review of the decision to withhold.  Halperin, 629 F.2d at 148; see American Civil Liberties Union v. Department of Justice, 548 F. Supp. 219, 221 (D.D.C. 1982); Iglesias v. Central Intelligence Agency, 525 F. Supp. 547, 552 (D.D.C. 1981).

In addition, an agency head may exempt classified information from disclosure under the Privacy Act to the same extent that the information is exempt under FOIA Exemption 1.  5 U.S.C. § 552a(k)(1); 28 C.F.R. § 16.74 (2006).  Subsection (k)(1) simply incorporates FOIA Exemption (b)(1), 5 U.S.C. § 552(b)(1).  Blazy v. Tenet, 979 F. Supp. 10, 23-25 (D.D.C. 1997), summary affirmance granted, No. 97-5330, 1998 WL 315583 (D.C. Cir. May 12, 1998); see also OMB Guidelines, 40 Fed. Reg. 28,948, 28,972 (July 9, 1975).  That is the case here.

The Foreign Intelligence Surveillance Act compels secrecy for OIPR's operational activities.  50 U.S.C. § 1803(c); see Bradley Dec. ¶ 7.  As a result, the Department of Justice has classified FISA files under Executive Order and is unable to either admit or to deny the existence of any materials.  See Bradley Dec. ¶ 8.  To do otherwise would risk violating the FISA and compromising the national security interests by revealing classified information.  See id. ¶¶ 10-12.

**Discovery Is Unwarranted**

Plaintiff contends that discovery is necessary in this routine FOIA case.  Defendants have already addressed two of the grounds upon which Plaintiff seeks discovery and supplemented the record with evidence concerning JTTF and the OIPR.  Other than those arguments, Plaintiff relies on FBI's FOIA office having sent a duplicative copy of a response letter and the absence of detailed information on FBI's computer systems.  Neither these nor any of Plaintiff's other contentions warrant discovery here.

Discovery in FOIA actions is generally restricted.  See Public Citizen Health Research Group v. FDA, 997 F. Supp. 56, 72 (D.D.C. 1998) ("Discovery is to be sparingly granted in FOIA actions.").  In any FOIA case, the defendant can establish the reasonableness of its search by affidavits if they are relatively detailed, non-conclusory, and made in good faith.  Weisberg v. Department of Justice, 745 F.2d 1485 (D.C. Cir. 1985).  Summary judgment is appropriate where, as here, the agency submits a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched,'" unless a review of the record raises substantial doubt" about the adequacy of the search.  Valencia-Lucena v. United States Coast Guard, 180 F.3d 321,

326 (D.C. Cir. 1999), quoting Oglesby v. Department of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).

The Court takes the initial look at Defendant's evidence, and the Declaration of David M. Hardy

patently meets this standard.

       Plaintiff's opposition disregards the reasonableness standard.  Plaintiff's frustration at the

absence of records is simply not grounds for denying summary judgment because the agency has

the burden only to conduct a reasonable search which it has clearly done.  Oglesby, 920 F.2d at

68; Weisberg, 745 F.2d at 1485.  Plaintiff has not identified any other locations which could

reasonably be expected to contain responsive information, and the record evidence is consistent

with the absence of records.  Moreover, his argument that the FBI must reveal every detail about

the the inner workings of the computer software of the FBI's Central Records System to

eliminate any possibility that its computer system may have malfunctioned and thereby caused an

inaccurate "no records" response is based on nothing more than unfounded speculation which is

insufficient to warrant denying the government's motion.  Safeguard Servs., Inc. v. Securities &

Exchange Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991); Flowers v. IRS, 307 F.Supp.2d 60,

67 (D.D.C. 2004) ("purely speculative claims about the existence and discoverability of other

documents" are not enough to rebut existence of good faith); cf. National Archives & Record

Admin. v. Favish, 541 U.S. 157, 174 (noting realistically that "[a]llegations of government

misconduct are easy to allege and hard to disprove") (internal quotation omitted).  The issue is

not whether there might exist any other records possibly responsive to the request, but rather

whether the actual search for responsive records was reasonable.  Id; Meeropol v. Meese, 790

F.2d 942, 956 (D.C. Cir. 1986).

While plaintiff correctly observes that not every single detail of the FBI's record systems
has been explained down to the smallest detail, the detailed declaration concerning the FBI's
CRS demonstrates the reasonableness of the search because it is relatively detailed,
non-conclusory, and made in good faith. Weisberg, 745 F.2d at 1485; Perry v. Block, 684 F.2d
121, 125-26 (D.C. Cir. 1982); see Hudgins v. IRS, 620 F. Supp. 19, 21 (D.D.C. 1985). Indeed,
the FOIA itself protects from disclosure detailed information about the computer codes to protect
the government's information systems. See 5 U.S.C. § 552(b)(2).[2] Because DOJ has diligently
followed up on all information provided by Plaintiff, no more should be required. Kowalczyk v.
Department of Justice, 73 F.3d 386, 389 (D.C. Cir. 1996) (the agency is not required to speculate
about potential leads to the location of the responsive documents).

Nothing about the information about the JTTF or OIPR in Plaintiff's Opposition
establishes any link between Plaintiff and JTTF. See Pl.'s Opp. at 6-8. Plaintiff's apparent
supposition or suspicion that "JTTF has been sticking its investigative nose into his business" is
pure speculation. Pl.'s Opp. at 7. Plaintiff does not even claim to be a "peaceful demonstrator"
or "anti-war activist" like the people he claims have attracted the attention of the JTTF. See Pl.'s
Opp. at 7-8. But even if he did claim to be similarly situated to the individuals he identifies or

---

[2] E.g., Prows v. United States Dep't of Justice, No. 90-2561, 1996 WL 228463, at *2
(D.D.C. Apr. 25, 1996) (protecting internal DEA markings and phrases, including G-DEP and
NADDIS codes, that could, if released, facilitate improper access to sensitive information); Hall
v. United States Dep't of Justice, No. 87-474, 1989 WL 24542, at *2 (D.D.C. Mar. 8, 1989)
(protecting various items that "could facilitate unauthorized access to [agency] computer
systems"); Institute for Policy Studies v. Department of the Air Force, 676 F. Supp. 3, 5 (D.D.C.
1987) (exempting record revealing sensitive portions of agency's computer system which could
be used to locate system's vulnerabilities); see Windels, Marx, Davies & Ives v. Department of
Commerce, 576 F. Supp. 405, 412 (D.D.C. 1983) (protecting computer program under
Exemptions 2 and 7(E) because it merely instructs computer how to detect possible violations of
law and does not regulate or modify public behavior).

otherwise claimed to have reason to believe that JTTF had information about him in its operational files, that information would be classified and unavailable under the FOIA. Because there is no indication that any records exist about Plaintiff, there logically could be no policies or procedures applicable to their destruction.

That no records were located is not evidence that the search was in any way defective. Once the agency establishes the adequacy of its search, the burden then shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. Miller, 779 F.2d at 1383. It is insufficient for a requester to attempt to rebut agency affidavits with purely speculative claims. See Carney v. Dep't of Justice, 19 F.3d 807, 813 (2d Cir. 1994); SafeCard, 926 at 1200; Maynard v. CIA, 986 F.2d 547, 559-560 (1st Cir. 1993). Finally, with regard to the material facts identified in paragraphs 7-12 of defendants statement of undisputed material facts, Plaintiff fails to establish any genuine issue of fact by merely asserting that there is one. See id. Accordingly, the Court should conclude that the Department of Justice's search was reasonable and adequate and grant it motion for summary judgment.

**Plaintiff Is Not Entitled To Attorney's Fees**

In a single sentence toward the end of his Opposition, Plaintiff asserts an entitlement to attorney's fees in this case because he supposedly received a "substantive response to his FOIA request" only after the litigation was commenced. Not only is that incorrect as a matter of fact, but it is also erroneous as a matter of law.

The FOIA permits the Court to award reasonable litigation costs only if a requester substantially prevails, and Plaintiff has clearly not done so here. 5 U.S.C. § 552(a)(4)(E); Oil Chem. & Atomic Workers Int'l Union v. Dep't of Energy, 288 F.3d 452 (D.C. Cir. 2002). As

the D.C. Circuit made clear in <u>Oil Chemical</u>, to be eligible to receive costs, a FOIA requester must have "been awarded some relief by a court, either in a judgment on the merits or in a court-ordered consent decree."  288 F.3d at 456-57 (quotations and alteration omitted).  Plaintiff has not and should not been awarded any such relief.  <u>See</u> <u>Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.</u>, 532 U.S. 598, 604 (2001).  Merely accomplishing what he set out to do in the form of getting further information about DOJ is insufficient because Plaintiff is in exactly the same posture he was before this litigation: the DOJ has not produced any responsive records and there has been no change whatsoever in the legal relationship between the parties.  <u>Union of Needletrades v. INS</u>, 336 F.3d 200, 206 (2d Cir. 2003) (declaring that although requester had accomplished his objective in bringing the suit, he was ineligible for fees because he would still not be eligible to recover costs).  Accordingly, Plaintiff is not entitled to any fees.

<u>**Conclusion**</u>

For all these reasons, defendants' motion to dismiss and for summary judgment should be granted.

Dated: September 24, 2007.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

 /s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_/s/_ _____
JANE M. LYONS, D.C. Bar # 451737
Assistant United States Attorney
555 4th Street, N.W - Room E4822.
Washington, D.C.  20530
(202) 514-7161

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUAN CARLOS GINARTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-CV-2216 |
| ) | |
| ROBERT S. MUELLER, III, et al., ) | |
| ) | |
| Defendants. ) | |

**SECOND DECLARATION OF DAVID M. HARDY**

I, David M. Hardy, declare as follows:

(1)    I am currently the Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), at the Federal Bureau of Investigation,

Headquarters Office ("FBIHQ") in Washington, D.C. I have held this position since August 1,

2002. Prior to joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge

Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom

of Information ("FOIA") policy, procedures, appeals, and litigation for the Navy. From

October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and

routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law

in the State of Texas since 1980.

(2)    In my current capacity as Section Chief of RIDS, I supervise approximately 216

employees who staff a total of ten (10) FBIHQ units and a field operational service center unit

whose collective mission is to effectively plan, develop, direct and manage responses to requests

for access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order

12958, as amended; Presidential, Attorney General and FBI policies and procedures; judicial decisions and other Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the handling of the FOIA/Privacy Act of request made by counsel Jonathan L. Katz on behalf of plaintiff, Juan Carlos Ginarte, who seeks access to records pertaining to Mr. Ginarte.

(4)     I have reviewed "Plaintiff's Opposition to Defendants' Motion to Dismiss or for Summary Judgment ("Opposition") filed on or about August 20, 2007. This declaration is submitted to address the issue raised in plaintiff's Opposition regarding his request made to FBI Headquarters ("FBIHQ") Joint Terrorism Task Force ("JTTF") for records pertaining to himself. This declaration supplements and further clarifies my previous declaration submitted in this case in support of the FBI's Motion for Summary Judgment, Declaration of David M. Hardy, dated August 3, 2007 ("Hardy Declaration").

## FBI'S JOINT TERRORISM TASK FORCE

(5)     The FBI operates numerous Joint Terrorism Task Forces. These JTTF's are small cells of highly trained, locally based, investigators, analysts, linguists, SWAT experts and other specialists from dozens of U.S. law enforcement and intelligence agencies. There are JTTF's located in 100 cities nationwide, including at least one in each of the FBI's field offices. The

-2-

National Joint Terrorism Task Force works out of FBI Headquarters.

(6)    When a request is made to an FBI field office, a search of the CRS[1] would retrieve
and identify any records that were compiled by the JTTF in that particular field office indexed
under the specific name or subject matter of the investigation - in this case, Juan Carlos Ginarte.
A "no records" response means that no records generated by the JTTF in a particular field
office -- and retrieved through CRS -- indexed the specific name or subject matter requested.  A
search of the CRS at FBIHQ would retrieve and identify any JTTF records which are filed at
FBIHQ.

(7)    Plaintiff made a request to the "Freedom of Information Officer, Joint Terrorism
Task Force, Federal Bureau of Investigation, 935 Pennsylvania Avenue, NW, Washington, DC
20535.  As plaintiff's request was addressed to FBIHQ, this request was construed as a request
for HQ records regarding plaintiff.  As noted in the Hardy Declaration at footnote 1, plaintiff
made a previous request for FBIHQ records and received a "no records" response to this request.

---

[1] See Hardy Declaration dated August 3, 2007, ¶¶ 10-15 for a detailed explanation of the
FBI's Central Records System.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibit A attached hereto is a true and correct copy.

Executed this _____21st_____ day of September, 2007.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JUAN CARLOS GINARTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-2216 (RJL) |
| ) | |
| ROBERT S. MUELLER, III, et al., ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF MARK A. BRADLEY

I, Mark A. Bradley, do hereby state and declare as follows:

1.    I am the Deputy Counsel for Intelligence Policy, Office of Intelligence Policy and Review ("OIPR"), National Security Division of the United States Department of Justice ("DOJ" or Department"). In this capacity, I supervise Freedom of Information Act (FOIA), 5 U.S.C. § 552 administration. I am the final decision-making authority in my office regarding access requests made under the FOIA.

2.    I make the statements herein on the basis of personal knowledge, as well as on information acquired by me in the course of performing my official duties.

3.    OIPR provides legal advice to the Attorney General and the United States intelligence agencies regarding questions of law and procedure that relate to United States intelligence activities. OIPR performs review functions of certain intelligence activities, and prepares and presents applications for electronic surveillance, physical search authorizing the

installation and use of pen registers and trap and trace devices, and access to certain tangible

things, to the United States Foreign Intelligence Surveillance Court ("FISC").

## PLAINTIFF'S FOIA REQUEST

4.      By letter dated October 9, 2006, Juan Carlos Ginarte, through his attorney

Jonathan L. Katz, requested access under FOIA to "any records, documents, files,

communications, memorandums, orders, agreements and/or instructions created from January 1,

1995 to the present, that were prepared, received, transmitted, collected and/or maintained by the

Federal Bureau of Investigation, the Department of Justice, or any of their components or field

offices . . . relating to [him]."   A copy of plaintiff's FOIA request is attached hereto as Exhibit

A.  OIPR received plaintiff's request on October 17, 2006 and assigned the request tracking

number OIPR 07-003.

## OIPR'S SEARCH AND RESPONSE

5.      Upon receiving plaintiff's FOIA request, OIPR initiated a search for responsive

documents.  OIPR maintains two general categories of records: operations records relating to

proceedings before the FISC under the Foreign Intelligence Surveillance Act ("FISA"), including

applications for authority to conduct electronic surveillance, physical searches, other authorities

under FISA as referenced above, and other operational matters; and policy and correspondence

records, including congressional inquiries and reports.

6.      On November 7, 2006, OIPR responded to plaintiff's FOIA request, advising that

a search of its policy and correspondence records did not reveal any information responsive to

plaintiff's request.  OIPR further informed plaintiff that it could neither confirm nor deny the

existence of records pertaining to him in OIPR files relating to applications to the Foreign

2

Intelligence Surveillance Court. A copy of OIPR's response is attached hereto as Exhibit B.

7.     The FISA specifies that the record of proceedings "including applications made and orders granted, shall be maintained under security measures established by the Chief Justice in consultation with the Attorney General and the Director of [National] Intelligence." 50 U.S.C. § 1803(c). It further provides that persons rendering assistance under the Act do so "in such a manner as will protect its secrecy." OIPR's "neither confirm nor deny" response is authorized by Executive Order 12958 § 3.6, *as amended*, which states:

> In response to a request for information under the Freedom
> of Information Act, the Privacy Act of 1974. . .
> (a) An agency may refuse to confirm or deny the existence
> or nonexistence of requested records whenever the fact
> of their existence or nonexistence is itself classified under
> this order or its predecessors.

Section 1.4(c) of the Executive Order identifies intelligence activities and intelligence sources or methods as categories of information that may be considered for classification. Information falling within these categories may be classified by an original classification authority if "the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security ... and the original classification authority is able to identify or describe the damage." § 1.1(a). The Order defines "national security" as the "national defense or foreign relations of the United States." § 6.1(y). "It is presumed that information that continues to meet the classification requirements under this order requires protection." § 3.1(b).

8.     The Department can neither admit or deny the existence of records pertaining to FISA activities without disclosing classified information. As explained below, either confirming

3

or denying that the Department maintains information in the FISA application files responsive to

such requests for access would result in disclosure of the kinds of information set forth in section

1.4(c) of Executive Order 12958, *as amended,* and such disclosure could reasonably be expected

to cause damage to the national security. Thus, the only response the Department can make to

plaintiff's request for information within the FISA files is neither to confirm nor deny the

existence of responsive information, as authorized under section 3.6(a) of Executive Order

12958, *as amended.* No responsible alternative exists to this procedure, except in those few

instances where there has already been an official government affirmation or denial of the

existence of such materials by an authorized United States executive branch official. To my

knowledge, no such disclosure has been made regarding the subject of plaintiff's request.

     9.     If it were not permitted to make this type of response to requests for information

about a specific person or organization in the FISA application files, the Department would find

itself in an insoluble dilemma. Let it be assumed, for the sake of argument, that OIPR does

maintain information within a FISA application that is responsive to such a request. Only three

possible courses of action are available:

    a.     OIPR could deny that it maintains any responsive information. In this
            hypothetical case, such a response would be false and, therefore impermissible.

    b.     OIPR could admit that it maintains responsive information but decline to produce
            it on the ground it is classified. This response is not acceptable because it
            discloses the very heart of what must be protected: the fact that information about
            a specific person or organization was retrieved from records pertaining to
            approval of specific FISA surveillance, physical searches, or overseas electronic
            surveillance.

    c.     OIPR could decline either to confirm or to deny that it maintains responsive
            information concerning these activities. This response would protect the security
            of the electronic surveillance or physical search, but <u>only if</u> applied consistently to

every request that seeks information regarding such activities. If OIPR denied that it maintains responsive information only in cases in which it in fact does not, while refusing to confirm or deny that it maintains responsive information only in those instances in which it does maintain such information, every refusal to confirm or deny would be a tacit admission that OIPR in fact has responsive information in that case, thereby linking the subjects of those requests to the U.S. foreign intelligence gathering by one or more of the above techniques.

10.    Assuming that OIPR maintains information in its FISA files that is responsive to a

FOIA request, acknowledgment of that fact would disclose that information within the scope of

the request was pertinent to the approval of one or more specific uses of the above techniques.

Such disclosures would be recognized and exploited for the immense intelligence and

counterintelligence value they would yield to trained intelligence analysts, such as those

employed by hostile intelligence services. By its terms, the FOIA permits requests to be filed by

"any person," including officials of foreign governments and other foreign nationals. Moreover,

intelligence organizations are expert at acquiring and analyzing information in the public domain.

It therefore must be expected that any information given to one FOIA requester will be available,

not only to subsequent requesters, but also to hostile foreign powers and their intelligence

services. If it were the policy of OIPR to indicate routinely that it maintains responsive

information in its FISA files, these responses would provide trained intelligence analysts with

individual pieces of information that could be compiled into a catalog of FISA activities,

overseas electronic surveillance and physical searches. Such a policy would reveal instances

where such activities have been used to obtain intelligence information, and also confirm

instances where there have been no such activities. From such disclosures, hostile intelligence

services could discover which intelligence agents operating in this country were known to the

U.S. Government and which were not. This information could be used by a hostile intelligence

service to deploy counterintelligence assets against the U.S. Government more effectively,

increasing the risk that U.S. intelligence collecting would be neutralized or impaired.

11.    Assuming arguendo that OIPR did not maintain FISA information responsive to a

request concerning a particular individual or organization, acknowledgment of this fact would

indicate that OIPR had not prepared an application under the FISA for that individual or

organization. If OIPR were to indicate routinely that it does not maintain responsive records,

these responses would also be of immense value to trained intelligence analysts and foreign

powers. This information would reveal that the U.S. Government's counterintelligence elements

had not focused on intelligence or international terrorism activities in which that individual or

organization may be involved. Thus, a hostile intelligence service or international terrorist

organization could easily and quietly assess the extent of the U.S. Government's awareness of its

activities.

12.    For all of the above reasons, the fact of the existence or nonexistence of any FISA

information responsive to the plaintiff's request is properly classified in accordance with criteria

established by sections 1.1 and 1.4 of Executive Order 12958, as amended. Such information

relates directly to intelligence sources, methods, and activities of the United States. The

impairment of U.S. intelligence gathering that would result from disclosing such information

would make the United States more vulnerable to hostile foreign intelligence services and

international terrorists, and deprive U.S. policy makers of information vital to the national defense

and the conduct of foreign relations. OIPR can neither confirm nor deny the existence or

nonexistence of FISA information responsive to plaintiff's request without disclosing information

that reasonably could be expected to cause serious damage to the national security of the United

States and that is, therefore, properly classified at the SECRET level in accordance with Executive

Order 12958, *as amended.*

## PLAINTIFF'S FOIA APPEAL

13.    By letter dated December 26, 2006, Juan Carlos Ginarte, through his attorney

Jonathan L. Katz, filed an appeal under FOIA with the Director of the Office of Information and

Privacy (OIP). A copy of plaintiff's FOIA appeal is attached hereto as Exhibit C.

14.    On April 13, 2007, OIP responded to plaintiff's FOIA appeal, affirming, on

modified grounds, OIPR's refusal to confirm or deny the existence of any responsive records.

OIP further informed plaintiff that the existence or nonexistence of specific FISA records

maintained by OIPR is classified, and exempt from the access provisions of the Privacy Act of

1974 pursuant to 5 U.S.C. § 552a(k)(1) and the Freedom of Information Act,

5 U.S.C. § 552 (b)(1). Plaintiff was further advised that DOJ's Department Review Committee,

which has administrative appeal authority with regard to the classification of national security

information, has previously affirmed [OIPR's] refusal to confirm or deny the existence of FISA

records pursuant to 5 U.S.C. § 552 (b)(1). A copy of OIP's response is attached hereto as Exhibit

D.

I declare under penalty of perjury that the foregoing is true and correct.

Mark A. Bradley
Deputy Counsel for Intelligence Policy
Office of Intelligence Policy & Review
National Security Division

Executed on this __21st__ day of September, 2007.

7

**MARKS & KATZ, LLC**
**ATTORNEYS AT LAW**
1400 SPRING STREET
SUITE 410
SILVER SPRING, MARYLAND 20910
(301) 495-4300
FAX (301) 495-8815
justice@markskatz.com
www.markskatz.com

RECEIVED
NSD 07-63
'06 OCT 17 PM 4: 41
DEPT OF JUSTICE

JAY S. MARKS (MD, IL)
JONATHAN L. KATZ (MD, DC, VA)

October 9, 2006

FBI Washington Field Office
Washington Metropolitan Field
Office
FOIA Department
601 4th Street, N.W.
Washington, D.C. 20535-0002

FBI Jacksonville Field Office
FOIA Department
Suite 200
7820 Arlington Expressway
Jacksonville, Florida 32211-
7499

FBI North Miami Beach Field
Office
FOIA Department
16320 Northwest Second Avenue
North Miami Beach, Florida
33169-6508

FBI Tampa Field Office
FOIA Department
5525 West Gray Street
Tampa, Florida 33609

FBI Baltimore Field Office
FOIA Department
2600 Lord Baltimore
Baltimore, Maryland 21244

FBI Newark Field Office
FOIA Department
11 Centre Place

Newark, New Jersey 07102-9889

FBI New York Field Office
FOIA Department
26 Federal Plaza, 23rd. Floor
New York, New York 10278-0004

FBI Norfolk Field Office
FOIA Department
150 Corporate Boulevard
Norfolk, Virginia 23502-4999

FBI Richmond Field Office
FOIA Department
1970 E. Parham Road
Richmond, Virginia 23228

Freedom of Information
Officer
Joint Terrorism Task Force
Federal Bureau of
Investigation
935 Pennsylvania Avenue, NW
Washington, D.C. 20535

GayLa D. Sessoms
FOIA Coordinator
Office of Intelligence Policy
and Review
Room 6150
950 Pennsylvania Avenue, N.W.
Department of Justice
Washington, D.C. 20530-0001

1

EXHIBIT
A

Re:  **REQUEST UNDER FREEDOM OF INFORMATION ACT AND PRIVACY ACT**

To all above-listed addressees:

This letter constitutes a request ("Request") under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), the Justice Department's implementing regulations (including 28 C.F.R. § 16.1), the Privacy Act, 5 U.S.C. § 552a, and all other applicable regulations and other applicable provisions of law.

This Request is submitted by undersigned counsel on behalf of our client Juan Carlos Ginarte ("the Requester" or "Ginarte").

I.   **The Requestor**

Juan Carlos Ginarte is a natural person. His birthdate is October 30, 1962. He is a naturalized United States citizen. His social security number is 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. He resides at 4000 Tunlaw Road, NW, Apt. 325, Washington, DC 20007 (since approximately 2004). He previously resided at 3140 Wisconsin Avenue, NW, Apt. 301, Washington, DC 20016 (approximately 1999-2004).

II.  **Request.**

Mr. Ginarte seeks disclosure of any records[1], documents, files, communications, memorandums, orders, agreements and/or instructions created from **January 1, 1995, to the present**, that were prepared, received, transmitted, collected and/or maintained by the Federal Bureau of Investigation, the Department of Justice, or any of their components or field offices, including but not limited to the following:

1.   Any records, order, agreement, or accommodation relating or referring to Ginarte, including but not limited to records that document any monitoring, surveillance, observation, questioning, interrogation, investigation, infiltration and/or collection of information relating to Ginarte.

2.   Any records relating or referring to how, why or when Ginarte was selected to be a subject of monitoring,

---

[1] The term "records" as used herein includes all records or communications preserved in electronic or written form, including but not limited to correspondence, documents, data, videotapes, audiotapes, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, or studies.

surveillance, observation, questioning, interrogation, investigation, infiltration and/or collection of information.

   3.   Any policies or procedures for cross-referencing records about Ginarte.

      4.   Any policies or procedures regarding retention and destruction of records about Ginarte.

   We pre-authorize spending up to $1000.00 combined for all of the addressees listed above (e.g., this $1000 pre-authorization would be reached if we were billed $333 from the Tampa FBI field office, $333 from the Miami Beach FBI field office, and $334 from the Jacksonville, Florida, FBI field office).

   Pursuant to applicable regulations and statutes, if this request is denied in whole or in part, we ask that  you justify all deletions by reference to specific exemptions of the FOIA, the Privacy Act, and any other provisions of law upon which you rely. Unless you reply otherwise within the response deadlines set forth in the FOIA, I will assume that you do not claim that you are not the proper office to receive this request. Mr. Ginarte reserves the right to appeal a decision to withhold any information.

   Please furnish all requested information to my above-listed office. Thank you.

                              Very truly yours,


                              Jonathan L. Katz
                              Attorney for Juan Carlos Ginarte


**Attach privacy act waiver**
cc: Karen L. Melnik, Esquire (by e-mail only)
    U.S. Attorney's Office
    555 Fourth St., NW
    Washington, DC 20530
    karen.melnik@usdoj.gov

**PRIVACY ACT REQUEST**

This Privacy Act Request authorizes my lawyer Jonathan L. Katz to obtain any and all information requested about me under the Freedom of Information Act, the Privacy Act, and all other provisions of law.

In that regard, I provide the following information:

I am Juan Carlos Ginarte. My birthdate is October 30, 1962. I am a naturalized United States citizen. My social security number is 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. I reside at 4000 Tunlaw Road, NW, Apt. 325, Washington, DC 20007. I am to be contacted through my counsel, at Jonathan L. Katz, 1400 Spring Street, Suite 410, Silver Spring, MD 20910, 301-495-4300.

I have no aliases, but the following are nicknames that I have been called: Juanqui; and JC.

Under penalty of perjury, I hereby declare that I am the person named above and I understand that any falsification of this statement is punishable under the provisions of Title 18, United States Code (U.S.C.), Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years, or both; and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of Title 5, U.S.C., Section 552a(i)(3) as a misdemeanor and by a fine of not more than $5,000.

Juan Carlos Ginarte
October 4, 2006



**U.S. Department of Justice**

National Security Division

_Washington, D.C. 20530_

**NOV - 7** 2006

Jonathan L. Katz
Marks & Katz, LLC
1400 Spring Street, Suite 410
Silver Spring, MD 20910

Re: FOIA/PA # 07-003

Dear Mr. Katz:

This responds to your October 9, 2006 request for access to all records pertaining to your client Juan Carlos Ginarte. Your Freedom of Information Act (FOIA) and Privacy Act request was received on October 17, 2006, and with the reservation noted below, a search of our records did not reveal any information or records responsive to your request.

The Office of Intelligence Policy and Review, which is now a part of the Department's new National Security Division, provides advice to the Attorney General and United States intelligence agencies regarding questions of law and policy that relate to U.S. intelligence activities; performs review functions of certain intelligence activities; and prepares and presents applications for electronic surveillance and physical search to the United States Foreign Intelligence Surveillance Court pursuant to the Foreign Intelligence Surveillance Act (FISA). We maintain copies of all FISA applications, as well as requests for approval of various foreign intelligence and counterintelligence collection techniques such as physical searches. However, we did not search these records in response to your request because the existence or nonexistence of such records on specific persons or organizations is properly classified under Executive Order 12958, as amended. To confirm or deny the existence of such materials in each case would tend to reveal which persons or organizations are the subjects of such requests. Accordingly, we can neither confirm nor deny the existence of records responsive to your request pursuant to 5 U.S.C.§ 552a (k)(2).

Furthermore, if there were any records in these files responsive to your request, they would be exempt from disclosure under section (b)(1) of the Freedom of Information Act. As stated earlier, however, you should not construe this response as either confirming or denying the existence of any such records pertaining to your request.

If you are not satisfied with this response you may administratively appeal by writing to the Director, Office of Information and Privacy, United States Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, DC 20530-0001, within sixty days from the date of this letter. Both the letter and envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

GayLa D. Sessoms
FOIA Coordinator

# MARKS & KATZ, LLC
## ATTORNEYS AT LAW
1400 SPRING STREET
SUITE 410
SILVER SPRING, MARYLAND 20910
(301) 495-4300
FAX (301) 495-8815
justice@markskatz.com
www.markskatz.com

JAY S. MARKS (MD, IL)
JONATHAN L. KATZ (MD, DC, VA)

December 26, 2006

DIRECTOR
OFFICE OF INFORMATION POLICY
UNITED STATES DEPARTMENT OF JUSTICE
1425 NEW YORK AVENUE, NW
SUITE 11050
WASHINGTON, DC 20530-0001

OFFICE OF INFORMATION
AND PRIVACY

JAN 0 3 2007

RECEIVED

Re: APPEAL OF FOIA CASE NO. 07-003; Subject: GINARTE, JUAN
CARLOS; Your reply date: November 7, 2006

To the Director, Office of Information Policy:

    This letter appeals the above-listed (and attached)
response to my attached Freedom of Information/Privacy Act
request ("Request") **to the Justice Department's Office of
Intelligence Policy and Review.**

    The Justice Department's attached denial is contrary to
governing law. *First*, the Freedom of Information Act, Privacy
Act and other applicable laws do not permit the Justice
Department to deny my Request merely pursuant to Executive Order
12958 nor to any other executive order. *Second*, the Justice
Department is not blanketly exempted from disclosures under the
FOIA and Privacy Act, and your denial does not state that there
does not exist information responsive to my Request that does
not fall under Executive Order 12958.

    Additionally, your letter erroneously claims that section
(b)(1) of the FOIA exempts any records responsive to my Request.
You have no way of knowing that, particularly since your letter
says that no search was conducted in response to my Request.

    Your attached reply seems to be a form letter to which
little time was spent considering my specific Request. Spitting

EXHIBIT
C

out form letters may save time, but does do not satisfy the letter and spirit of the FOIA and Privacy Act.

Therefore, please reverse the attached reply, and please provide the information I have requested. I preauthorize up to $300 for any legitimate charges for this request. If the charge will be higher, I will need to authorize said charges in advance. Thank you.

Very truly yours,

Jonathan L. Katz



**U.S. Department of Justice**

Office of Information and Privacy

_____

Telephone: (202) 514-3642                    Washington, D.C. 20530


**APR 1 3 2007**


Jonathan L. Katz, Esq.
Marks & Katz, LLC                    Re:    Appeal No. 07-0437
1400 Spring Street, Suite 410               Request No. 07-003
Silver Spring, MD  20910                    ALB:SRO

Dear Mr. Katz:

        You appealed on behalf of your client, Juan Carlos Ginarte, from the action of the
National Security Division (NSD) on your client's request for access to records pertaining to
himself.

        After carefully considering your appeal, I am affirming, on modified grounds, NSD's
action in refusing to confirm or deny the existence of any records responsive to your client's
request. Please be advised that NSD would generally maintain records on individuals only
within its Foreign Intelligence Surveillance Act (FISA) records systems. The existence or non-
existence of specific FISA records maintained by NSD is classified, and, therefore, such records
are exempt from the access provisions of the Privacy Act of 1974 pursuant to 5 U.S.C.
§ 552a(k)(1). See 28 C.F.R. § 16.74 (2006). Accordingly, your client's access rights are limited
to those provided by the Freedom of Information Act. Likewise, NSD properly refused to
confirm or deny the existence of FISA records pertaining to your client pursuant to 5 U.S.C.
§ 552(b)(1), which protects classified information from disclosure under the FOIA. The
Department of Justice's Department Review Committee, which has administrative appeal
authority with regard to the classification of national security information, has previously
affirmed NSD's refusal to confirm or deny the existence of FISA records pursuant to 5 U.S.C.
§ 552(b)(1).

        If your client is dissatisfied with my action on your appeal, he may seek judicial review in
accordance with 5 U.S.C. § 552(a)(4)(B).

                                Sincerely,


                                Janice Galli McLeod
                                Associate Director



IPR                                                      EXHIBIT
                                                            D